UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUZETTE BADHAI, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 3:18-CV-00060-JCH |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT HOUSING FINANCE | : | |
| AUTHORITY AND CLAUDIA | : | |
| RODRIGUES, | : | |
| | : | |
| Defendants. | : | JANUARY 15, 2020 |

**DEFENDANTS' MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

DEFENDANTS – CONNECTICUT HOUSING
FINANCE AUTHORITY AND CLAUDIA
RODRIGUES

By:   /s/ Matthew K. Curtin
        Matthew K. Curtin – ct27765
        mcurtin@murthalaw.com
        Chelsea K. Choi – ct30387
        cchoi@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, CT 06103-3469
Telephone:  860.240.6000
Facsimile:   860.240.6150
Their Attorneys

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

FACTS .............................................................................................................3

ARGUMENT ...................................................................................................11

I.      LEGAL STANDARD ..............................................................................11

II.     SUMMARY JUDGMENT SHOULD ENTER IN CHFA'S FAVOR
        BECAUSE PLAINTIFF DID NOT HAVE AN EMPLOYMENT
        RELATIONSHIP WITH CHFA .................................................................12

III.    SUMMARY JUDGMENT SHOULD ENTER IN CHFA'S FAVOR ON
        PLAINTIFF'S RACE AND COLOR DISCRIMINATION CLAIMS ........................15

        A.      Plaintiff's 2014 Failure to Hire Claim is Time-Barred .................15

        B.      Plaintiff Cannot Establish a Prima Facie Case of Discrimination..............17

                1.      Failure to Hire ................................................................18

                2.      Change in Assigned Work ................................................22

                3.      Termination of Temporary Assignment..............................23

        C.      Legitimate Non-Discriminatory Reasons Exist for Defendants'
                Business Decisions and Plaintiff Cannot Show Pretext............................25

                1.      Failure to Hire ................................................................26

                2.      Change in Assigned Work and Termination of Temporary
                        Assignment....................................................................30

IV.     SUMMARY JUDGMENT SHOULD ENTER IN CHFA'S FAVOR ON
        PLAINTIFF'S HARASSMENT/HOSTILE WORK ENVIRONMENT CLAIM ........33

        A.      Plaintiff Cannot Demonstrate She was Subject to Severe or
                Pervasive Harassment ...............................................................33

V.      DEFENDANTS ARE ENTITLED TO SUMARY JUDGMENT ON
        PLAINTIFF'S SECTION 1983 CLAIMS IN COUNTS THREE AND FOUR
        FOR THE ADDITIONAL REASON THAT PLAINTIFF FAILS TO ALLEGE

OR ESTABLISH A VIOLATION OF HER CONSTITUATIONAL RIGHTS
AS A RESULT OF AN OFFICIAL POLICY OR CUSTOM...................................37

VI.      CONCLUSION ....................................................................................................39

## INTRODUCTION

Plaintiff Suzette Badhai ("Plaintiff") was not an employee of Defendant Connecticut Housing Finance Authority ("CHFA"). Instead, she accepted a temporary assignment at CHFA through a temporary employment agency, a fact Plaintiff readily admitted at her deposition.  Consequently, under well-established law, Plaintiff's employment discrimination claims fail and summary judgment must enter in Defendants' favor.

Even if Plaintiff could demonstrate that CHFA was her "employer" in this case, despite her admission to the contrary, she nevertheless cannot meet her burden of demonstrating race and color discrimination under applicable legal standards. For this reason, summary judgment also must be granted in Defendants' favor.

Counts One and Two of the Plaintiff's Third Amended Complaint [ECF No. 48] allege that CHFA did not hire Plaintiff for full-time employment and terminated her temporary assignment on the basis of her race and color, and subjected her to harassment and a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 ("Title VII"). Counts Three and Four allege CHFA and Plaintiff's temporary supervisor, Defendant Claudia Rodrigues ("Ms. Rodrigues") discriminated against Plaintiff based on her race and color, in violation of the Equal Protection Clause of the Fourteenth Amendment.  However, Plaintiff's allegations of discrimination are premised on unsubstantiated speculation and, more significantly, are directly contradicted by undisputed evidence, including Plaintiff's own admissions.

More particularly, uncontroverted evidence demonstrates Plaintiff was, at all times, a temporary worker assigned to CHFA by her employer, K Force. Plaintiff

performed various overflow clerical tasks to assist CHFA's Finance Department.  Her

duties changed as needed and her assignment could be terminated at any time.

The evidence further demonstrates that, over several years, CHFA had been

implementing a plan to reduce its reliance on temporary workers, including in the

Finance Department where Plaintiff had been assigned.  As a result, and as the need

for Plaintiff's assistance in performing clerical tasks wound down by late 2015, Plaintiff's

services were no longer needed and her assignment was terminated in early January

2016.

Moreover, the evidence shows that, even though Plaintiff applied for permanent

positions within CHFA's Finance Department in May 2014[1] and October 2015, she was

not qualified, she did not properly reapply for a reposting by CHFA, and she misstated

her credentials on her resume, including overstating her responsibilities as a temporary

worker with CHFA.  Further, Plaintiff concedes she cannot offer any proof regarding the

race or color or qualifications of any person who applied for those same positions or of

the persons actually hired by CHFA. Critically, Plaintiff admits that three of the four

decision makers involved with rejecting her application for employment did not harbor

**any** discriminatory animus.

In short, the evidence makes clear that CHFA's decisions – both in not hiring

Plaintiff for a permanent position and terminating her when her assignment was no

longer needed – constituted good business judgment not motivated by discriminatory

---

[1]    As set forth below, Plaintiff's claims relating to CHFA's failure to hire her for a permanent position
in May 2014 are barred by the applicable statute of limitations and should not be considered by
this Court in deciding the Motion for Summary Judgment.  *See, infra*, at Section III.A.

animus, as Plaintiff asserts.  Accordingly, summary judgment must enter in favor of CHFA as to Count One.

Plaintiff's claim premised on harassment and hostile work environment fares no better. There is simply no evidence that Plaintiff was subjected to severe or pervasive conduct in the workplace at CHFA based on her race or color, or that her conditions of employment were altered as a result of her race or color.  As a result, summary judgment must enter in favor of CHFA with respect to Count Two.

Finally, Defendants are also entitled to judgment as a matter of law on Counts Three and Four to the extent that the Court grants summary judgment to CHFA on Plaintiff's Title VII race and color discrimination and hostile work environment claims. Thus, summary judgment should enter in favor of Defendants on all claims advanced by Plaintiff in her Complaint.

## **FACTS**

### **The Parties**

Connecticut Housing Finance Authority ("CHFA") is a quasi-public organization that specializes in lending for affordable housing.  *See* L. Civ. R. 56(a)1 Statement of Undisputed Facts ¶ 1.[2]  Plaintiff was a temporary worker assigned to work for CHFA's Finance Department through an employment staffing agency, K Force.  *Id.* at ¶ 6. During her temporary assignment, Plaintiff reported to CHFA employee, Ms. Rodrigues. *Id.* at ¶¶ 15-16.

---

[2]      Citations are set forth as "Facts, ¶ __."

**Plaintiff's Temporary Assignment at CHFA**

Plaintiff initially learned about the temporary assignment in CHFA's Finance Department through K Force.  *Id.* at ¶ 7.  Plaintiff applied for the position online through K Force and interviewed with K Force employees at its office.  *Id.* at ¶ 8.  Plaintiff was paid by K Force and, if she wanted to work overtime, Plaintiff had to receive prior authorization directly from K Force.  *Id.* at ¶¶  9, 17. Plaintiff entered into an "Employee Work Assignment" with K Force which expressly states that Plaintiff worked for K Force and was assigned to provide temporary services to K Force's client, CHFA.  *Id.* at ¶ 13. In 2015, K Force issued Plaintiff a Form W-2. *Id.* at ¶ 11.  Simply put, K Force was, at all times, Plaintiff's employer, a fact Plaintiff readily concedes.  *Id.* at ¶ 12.[3]

Plaintiff was initially assigned to CHFA on or about January 14, 2013.  *Id.* at ¶14 At the time, CHFA used temporary workers to perform overflow duties in various departments on an as-needed basis.  *Id.* at ¶ 2.  Generally, temporary workers placed with the Finance Department performed clerical tasks, were less skilled and had less responsibility than CHFA employees in permanent positions.  *Id.* at ¶ 3.  CHFA does not provide temporary workers with specific job titles given the temporary nature of the arrangement and the variety of tasks that might be assigned or required.  *Id.* at ¶ 4. CHFA did not provide any health benefits to temporary workers, including Plaintiff.  *Id.*

---

3   Q:  Then Ann Galer said, "Technically as a temporary employee you were hired through a temporary agency but your employer was a temporary agency. And same for you, Ms. Badhai, your employer was K Force. Correct? And you answered "Correct."

A:  Yes.

Facts, at ¶ 12; Pl. Dep. Tr. at 90:16-22.

at ¶ 20.  CHFA did not conduct any performance reviews of temporary workers, including Plaintiff.  *Id.* at ¶ 20.

Plaintiff's duties as a temporary worker in the Finance Department varied and included providing customer service, preparing receipts, data entry, and imaging or scanning, *i.e.*, clerical duties.  *Id.* at ¶ 22. Plaintiff understood that her assignment with CHFA was temporary and that CHFA could end it at any time, even though it ended up lasting nearly three (3) years.  *Id.* at ¶ 23.

**Plaintiff's Interest in Full-Time Employment with CHFA**

Plaintiff applied twice for full-time positions with CHFA, in May 2014 and October 2015.  Facts, at ¶¶ 31-32.  Plaintiff was not hired in May 2014, and she did not timely file a charge or complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") as a result of any claims of discrimination in connection with CHFA's decision.[4]

In October 2015, CHFA posted a job opening for a Financial Clerk.  *Id.* at ¶ 33. The position required certain skills and experience, including managing Emergency Mortgage Assistance Program ("EMAP")[5] receipts and disbursements, EMAP change notices, new loan setup, purchase processing, and other functions related to mortgage

---

[4]    Plaintiff did not file her CHRO complaint until February 4, 2016, Facts, at ¶ 73, which is nearly a year after the applicable 300-day statute of limitations under Title VII.  *See, e.g., Carrion v. Coca-Cola Bottling Co. of New England*, 2006 WL 3526748, at *3 (D. Conn. Dec. 1, 2006) (Hall, J.) (granting summary judgment for defendant on Title VII race and national origin discrimination claims where plaintiff's charge of discrimination was filed with the EEOC and CHRO more than 300 days following the date of his termination).

[5]    CHFA's Emergency Mortgage Assistance Program is a program offered to qualifying homeowners experiencing financial hardship.  With EMAP, homeowners may qualify for monthly financial assistance to pay an existing mortgage for up to 60 months.  *See* Connecticut Housing Finance Authority, https://www.chfa.org/homeowners/emergency-mortgage-assistance-program/.

lending. *Id.* at ¶ 39. Plaintiff was one of forty-seven (47) applicants for the Financial Clerk position. *Id.* at ¶ 34.

At the time, CHFA had an unofficial practice of providing temporary workers with the opportunity of a courtesy interview for a permanent position, whether or not the temporary worker was qualified for the position. *Id.* at ¶ 30. Because Plaintiff was a temporary worker, CHFA offered Plaintiff a courtesy opportunity to interview for the Financial Clerk position. *Id.* at ¶ 35. But for CHFA's courtesy practice, however, Plaintiff would not have been invited for an interview for the Financial Clerk position because she lacked mortgage lending and purchase processing experience. *Id.* at ¶ 36.

Plaintiff applied and interviewed for the Financial Clerk position but was not selected. *Id.* at ¶ 37. Plaintiff was not hired because she lacked the regulatory background in mortgage lending that CHFA was looking for in a Financial Clerk candidate. *Id.* at ¶ 40. Moreover, during the application and interview process, Plaintiff misrepresented her skills and duties associated with the work she performed at CHFA. *Id.* at ¶ 38. Plaintiff even claimed on her resume that she was an "Accounting Analyst" at CHFA who reconciled month-end reports and performed closing procedures, created financial statements, conducted audits to the general ledger and maintained financial records, schedules and forms. *Id.* at ¶ 38. These claims were either false or grossly overstated since Plaintiff's temporary assignment with CHFA required her to perform clerical tasks. *Id.* at ¶ 22.

In addition, Plaintiff claimed on her resume that, while at Bank of America, she "led sales, and service functions **successfully** at the banking center." *See Id.* at ¶¶ 41-

42 (emphasis added).  However, during her interview, Plaintiff conceded she had been terminated from Bank of America specifically for not meeting her sales goals.  Facts, at ¶ 43.

Plaintiff interviewed with a four-person interview panel, including Ms. Rodrigues, Tom Mangiafico, Amy Soto, and Kassy Balesano.  Facts, at ¶ 37.  The interview panel unanimously rejected Plaintiff's application for the Financial Clerk position.  *Id.* at ¶ 44. On November 12, CHFA notified Plaintiff that she was not selected for the job.  *See Id.* at ¶ 37. Plaintiff admits that, while she speculates Ms. Rodrigues did not hire her because of her race or color, she has no reason to believe that the other three interview panelists based their decision on any protected characteristic.  *Id.* at ¶¶ 37, 76

**Reposting and Eventual Hire of Financial Clerk Position**

As it turned out, CHFA opted not to hire any of the 47 applicants who applied and interviewed for the Financial Clerk position at the same time that Plaintiff applied. Facts, at ¶ 45.  CHFA determined that none of the 47 applicants were qualified for the position, and accordingly, CHFA reposted the position in mid-November 2015 to expand its search for more qualified candidates.  *Id.* at ¶ 46.  Plaintiff did not reapply for the reposted Financial Clerk position, even though she admits she was aware of the reposting.  *Id.* at ¶ 47.

After the reposting and second round of applicants, CHFA hired Cynthia Ramos, a Hispanic female, who had well-documented experience in mortgage banking and lending, credentials and experience which Plaintiff admittedly lacked.  *Id.* at ¶ 48. Indeed, Plaintiff also had no experience in the purchasing functions of the Financial Clerk position, which constituted a substantial part of the role, and she did not possess

the overall depth and breadth of experience and knowledge necessary for the position. *Id.* at ¶¶ 49-50.

**CHFA's Reorganization and Reduction of Temporary Workforce**

As a temporary worker, Plaintiff was not assigned permanent tasks but rather completed projects on an as-needed basis.  Facts, at ¶ 64.  When Plaintiff started her assignment at CHFA, she worked on the Federal Emergency Homeowners' Loan Program ("FEHLP").[6]  *Id.* at ¶ 52.  CHFA eventually ceased administering FEHLP, but continued Plaintiff's temporary assignment and transitioned her to work on the state EMAP program for the duration of her assignment.  *Id.* at ¶¶ 53-54.  EMAP was a different program than FEHLP; EMAP loans offered a longer term of assistance for borrowers and were held by CHFA rather than by the federal Department of Housing and Urban Development.  *Id.* at ¶ 55.

Over the course of Plaintiff's temporary assignment, CHFA experienced a decrease in annual closings of loans requiring monthly assistance from EMAP.  *Id.* at ¶ 56.  By late 2015, based on a reduction in clerical work related to the EMAP program, Ms. Rodrigues recommended to her manager, John Chilson, and to CHFA Human Resources, that Plaintiff's temporary services were no longer needed.  *Id.* at ¶ 57. However, Ms. Rodrigues specifically requested, as a gesture of good will, that CHFA wait until after the holidays to terminate Plaintiff's temporary assignment.  *Id.* at ¶ 58.

Even before Plaintiff commenced her temporary assignment through K Force, CHFA had already made a policy decision to decrease reliance on temporary workers

---

6    The Federal Emergency Homeowners' Loan Program ("FEHLP") was a program that provided loans to qualified homeowners facing foreclosure, through the U.S. Department of Housing and Urban Development.

and had begun the process of reducing the number of temporary workers in the Finance Department and company-wide. *Id.* at ¶ 66. For instance, when Plaintiff began her assignment at CHFA, there were eight (8) temporary workers in the Finance Department. *Id.* at ¶ 67. But by the time Plaintiff's temporary assignment ended, CHFA had reduced its temporary workforce in the Finance Department from eight (8) to one (1) workers. *Id.* at ¶ 68. In fact, overall, CHFA reduced its temporary workforce from a high of eighty-two (82) workers in 2011 to only four (4) workers by early January 2017. *Id.* at ¶ 69. As of 2019, CHFA had stopped using temporary workers. *Id.* at ¶ 5.

**Termination of Plaintiff's Temporary Assignment**

On or about January 6, 2016, Ms. Rodrigues informed Plaintiff that her assignment had ended. *Id.* ¶ 59. Although Ms. Rodrigues informed Plaintiff that her assignment would end on Friday, January 8, 2016, and she would be paid for the additional two days, Plaintiff chose to leave her temporary assignment immediately on January 6, 2016, two days before it was scheduled to end. *Id.* at ¶¶ 60-61.

While Plaintiff was performing temporary services for CHFA, she was looking for other jobs. *Id.* at ¶ 21. Plaintiff understood her temporary placement at CHFA could end at any time. *Id.* at ¶ 65. CHFA did not replace Plaintiff and no CHFA position went unfilled after she left. *Id.* at ¶ 63. Plaintiff has no first-hand knowledge of who made the decision to eliminate her temporary assignment. *Id.* at ¶ 71.

**Plaintiff's Charges of Discrimination**

On or about February 4, 2016, Plaintiff filed a charge of discrimination with the CHRO alleging that CHFA failed to hire, demoted, and terminated her because of her race and color. *Id.* at ¶ 73. Plaintiff testified at her deposition that she charged CHFA

with discrimination because she felt she was qualified for the permanent position of Finance Clerk, but was not hired, notwithstanding the fact that she also acknowledged she does not know who else applied, what the other applicants' qualifications were, and what his or her race or color was, *id.* at ¶ 74, and notwithstanding the fact that Plaintiff did not reapply after CHFA opted to repost the Financial Clerk position to seek better qualified candidates.

The CHRO conducted a full investigation and, on May 31, 2017, made a finding of "No Reasonable Cause," administratively dismissing the Plaintiff's complaint. *Id.* at ¶ 75.

**Plaintiff's Lawsuit**

Despite the CHRO's findings, on or about December 18, 2017, Plaintiff initiated an action against Defendants in Connecticut Superior Court. *See* ECF No. 1. The action was removed to federal court and Plaintiff subsequently amended her complaint three times. *See* ECF Nos. 20-1, 26, and 48. Her Third Amended Complaint, which is the operative complaint, alleges that CHFA failed to hire her, demoted her, and terminated her based on her race and color. *See* ECF No. 48 ¶ 14. More particularly, Plaintiff asserts claims of employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 ("Title VII") (Count One), a claim for harassment and hostile work environment in violation of Title VII (Count Two), and claims for race and color discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment against CHFA and her former temporary supervisor, Ms. Rodrigues, respectively (Counts Three and Four). For the reasons set forth below, this Court should grant summary judgment in favor of Defendants on all counts.

## ARGUMENT

### I.   LEGAL STANDARD

Summary judgment is appropriate where the record demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  A "material" fact is one "that might affect the outcome of the suit under governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  A "genuine" dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party bears the initial burden of establishing that there are no genuine disputes as to any material fact.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  Once such a showing is made, the burden shifts to the nonmoving party to show the existence of a genuine issue for trial.  *Id.*  The Court may rely on admissible evidence only, *Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010), and must view the evidence in the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor.  *Weinstock*, 224 F.3d at 41.

> A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, [p]laintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.

*Welch-Rubin v. Sandals Corp.*, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (*quoting Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal quotations omitted)).  "Summary judgment cannot be defeated by the presentation . . .

of but a 'scintilla of evidence' supporting [a] claim." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (*quoting Anderson*, 477 U.S. at 251).

If the nonmoving party fails to make a sufficient showing on an essential element of any claim or defense for which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("movant's burden . . . satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim"). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## II.  SUMMARY JUDGMENT SHOULD ENTER IN CHFA'S FAVOR BECAUSE PLAINTIFF DID NOT HAVE AN EMPLOYMENT RELATIONSHIP WITH CHFA

As Plaintiff has admitted and the facts make clear, CHFA was not Plaintiff's "employer" as that term is used for purposes of determining liability under Title VII; she was, at all times, employed by K Force. Plaintiff has failed to present any facts to contradict this conclusion that would suggest CHFA had an employer-employee relationship with her. If CHFA was not Plaintiff's employer, then it cannot be held liable for workplace discrimination under Title VII. *See, e.g., Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, at 489-90 (S.D.N.Y. 1999) (defendant not an employer where security guard staffing agency paid plaintiff, maintained her employment records, maintained her insurance, and had ultimate authority to fire plaintiff, even though defendant supervised plaintiff); *accord Shah v. Bank of Am.*, 598 F. Supp. 2d 596, 602-

-12-

03 (D. Del.), *aff'd*, 346 F. App'x 831 (3d Cir. 2009) (holding that bank was not "employer" of temporary employee placed by temporary staffing agency where the plaintiff had an on-going relationship with the agency, agency assigned employee's rate of pay, employee reported his hours worked to agency, and agency paid plaintiff). On this basis alone, summary judgment must enter in favor of CHFA on all counts of the Complaint.

"This court uses the single and joint employer analyses to determine whether a non-employer has sufficient ties to a plaintiff or her employer to impose liability for workplace discrimination under Title VII . . . ." *Lenoble v. Best Temps, Inc.*, 352 F. Supp. 2d 237, 243 (D. Conn. 2005).  Control over an individual's work is a highly important factor under both tests.  *Id.* at 245.  "A plaintiff may prove that two distinct business entities are joint employers by showing that both companies '(1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process.'"  *Id.* at 246 (citation omitted).

Here, Plaintiff readily admits she was, at all times, a K Force employee placed by K Force staffing agency in a temporary assignment within CHFA's Finance Department. Facts, at ¶¶ 6, 12.  Plaintiff understood she was an employee of a staffing agency rather than CHFA.  *Id.* at ¶ 12.  The "Employee Work Assignment" between K Force and Plaintiff clearly states that Plaintiff worked for K Force and was assigned to provide temporary services to K Force's client, CHFA.  *Id.* at ¶ 13.  Further, K Force issued a 2015 W-2 to Plaintiff.  *See Id.* at ¶ 11.

Defendant does not dispute that it exercised some supervisory control over the Plaintiff by identifying tasks for Plaintiff to perform in her temporary assignment.  Facts, at ¶ 16.  However, this fact alone is not dispositive, *see Sowemimo,* 43 F. Supp. 2d at 490, and other indicia of control were missing.

The undisputed facts reflect that Plaintiff had an on-going and regular relationship with K Force.  Plaintiff testified she came to know of the assignment at CHFA based on a job posting by K Force.  Facts, at ¶ 7.  In order to be placed at CHFA, Plaintiff applied for the position online through K Force and interviewed with K Force employees at its office.  *Id.* at ¶ 8.  K Force paid Plaintiff during the temporary assignment.  *Id.* at ¶ 17.  K Force's authorization was required if Plaintiff wanted to work overtime.  *Id.* at ¶ 9.  Plaintiff never received benefits or performance reviews during the relevant period of time from CHFA, and CHFA, as a policy known to Plaintiff, did not provide benefits or performance reviews of temporary workers.  *Id.* at ¶¶ 19-20.  CHFA did not discipline Plaintiff during her assignment.  *Id.* at ¶ 20.

These facts demonstrate CHFA was not Plaintiff's employer and, therefore, it cannot be held liable for workplace discrimination.  *See West*, *supra*, 205 F. Supp. 2d at 540-41 (company was not employer where it did not informally or formally evaluate plaintiff's performance; counsel or coach her performance; train her or offer to pay for job-related training; provide her with administrative support; or pay her directly for her services).  Accordingly, the Court should enter summary judgment in Defendants' favor on all counts of the Complaint.

III.    **SUMMARY JUDGMENT SHOULD ENTER IN CHFA'S FAVOR ON PLAINTIFF'S RACE AND COLOR DISCRIMINATION CLAIMS**

Even assuming, *arguendo*, that CHFA, rather than K Force, was Plaintiff's employer for the purposes of Title VII, Plaintiff's claims of discrimination under Title VII fail as well. Title VII prohibits an employer from discriminating "against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color…." 42 U.S.C.A. § 2000e-2(a)(1). Plaintiff nevertheless has a heavy burden to prove a prima facie case of discrimination under Title VII. She must establish that Defendants' stated reasons for not hiring Plaintiff, removing certain duties, and ultimately terminating her temporary work assignment were false and pretextual, and that CHFA's business decisions were, in fact, motivated by race or color discrimination. The undisputed facts do not support Plaintiff's contention and, as a result, Plaintiff cannot meet her burden. As such, summary judgment should enter in favor of Defendants.

A.    **Plaintiff's 2014 Failure to Hire Claim is Time-Barred**

As an initial matter, CHFA is entitled to summary judgment on Plaintiff's race and color discrimination claim concerning her failure to be hired by CHFA for a permanent position in or around May 2014 because such claim is time-barred by the applicable limitation period under Title VII. Title VII's 300-day statute of limitations period begins after the commission of "an alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). Generally, "a litigant has up to 180 or 300 days *after* the unlawful practice happened to file a charge with the EEOC." *Johnson v. Connecticut, Dep't of*

*Corrections*, 428 F. Supp. 2d 87, 92 (D. Conn. 2006), *aff'd sub nom. Johnson v. State of Connecticut Dep't of Corrections*, 225 F. App'x 42 (2d Cir. 2007).

Although Plaintiff seeks to circumvent the statute of limitations by alleging a "continuous course of discrimination," under well-established law, the May 2014 failure to hire is a discrete act that is no longer actionable.  *See* ECF No. 48 ¶ 4; *see also Lyon v. Jones*, 260 F. Supp. 2d 507, 511 (D. Conn. 2003), *aff'd*, 91 F. App'x 196 (2d Cir. 2004).  This Court has held that a "failure to promote" claim is a "paradigmatic discrete act for which an action accrues for statute of limitations purposes on the date on which a decision not to promote occurs."  *Johnson*, 428 F. Supp. 2d at 92 (*citing Forsyth v. Fed. Employment and Guidance Serv.*, 409 F.3d 565, 572 (2d Cir.2005) (statute of limitations applies to "most discrete discriminatory acts, i.e., termination, failure to promote, denial of transfer, or refusal to hire . . . .")).  "[D]iscrete [ ] acts are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*. Each discrete [ ] act starts a new clock for filing charges alleging that act." *Sealy v. State Univ. of New York at Stony Brook*, 2018 WL 3151701, at *8 (E.D.N.Y. Mar. 5, 2018) (citation omitted), report and recommendation adopted as modified, 2018 WL 1505565 (E.D.N.Y. Mar. 27, 2018).

Here, it is undisputed that Plaintiff filed her CHRO complaint on February 4, 2016.  Facts, at ¶ 73.  Therefore, Plaintiff cannot bring a claim based on a purportedly discriminatory act – failure to hire – which took place more than 300 days prior to the February 4, 2016 filing date.  The 300th day preceding Plaintiff's complaint with the CHRO is April 10, 2015.  She alleges she was not hired for a position for which she was duly qualified in or around May 2014 – nearly a year prior to the running of the

limitations period. Therefore, Plaintiff's race and color discrimination claim based on

failure to hire Plaintiff for the position in May 2014 are time barred and summary

judgment must enter in favor of Defendants to the extent Plaintiff's claims are premised

on events from May 2014.

### B.   Plaintiff Cannot Establish a Prima Facie Case of Discrimination

Plaintiff's remaining claims fail because she cannot establish a prima facie

discrimination case. Title VII and Section 1983 claims are both analyzed under the

three-part burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973). *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.

2001).[7] First, Plaintiff is required to establish a prima facie case of discrimination. "A

prima facie case for disparate treatment is established by showing that: 1) the plaintiff is

a member of a protected class; 2) the plaintiff was qualified for his job; 3) the plaintiff

suffered an adverse employment action; and 4) that the adverse employment action

occurred under conditions giving rise to an inference of discrimination." *Joiner v.

Chartwells & Compass Grp. N. Am.*, 500 F. Supp. 2d 75, 78 (D. Conn. 2007). If a

plaintiff establishes each element of her prima face case, the burden shifts to the

defendant to "offer a legitimate, non-discriminatory reason for its actions." *Id.* at 79.

Once the defendant articulates a legitimate, non-discriminatory reason for the

---

[7]    Count Three is asserted against CHFA under Section 1983, and Count Four, under Section 1983,
is asserted against Ms. Rodrigues. Claims asserted under Title VII and 42 U.S.C. § 1983 are
addressed utilizing the same legal standards and, accordingly, such claims are analyzed
together. *See Brown v. Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 206 (D. Conn. 2017); *see
also Jackson v. Norwalk Bd. of Educ.*, 2004 WL 2472223, at *9 (D. Conn. Sept. 9, 2004) (granting
summary judgment for defendants on employment discrimination claims under § 1983 and Title
VII under the same McDonnell Douglas burden shifting analysis). As was the case in *Brown*,
Plaintiff's "Title VII discriminat[ion] . . . claim survives only if [Ms. Rodrigues] is liable, as [Plaintiff]
identifies no other [CHFA] employee, agent, or supervisor who is alleged to have discriminated
against him." *See Brown*, 247 F. Supp. 3d at 206 n. 4; *and* Facts at ¶ 76.

employment action, the burden shifts back to the plaintiff to produce evidence that the defendant's proffered explanation is pretext for illegal employment discrimination. *Id.* Even though the burden shifts under this framework, the ultimate burden to prove discrimination remains with the plaintiff at all times. *See Martinez v. Connecticut, State Library*, 817 F. Supp. 2d 28, 38 (D. Conn. 2011).

As set forth below, Plaintiff cannot demonstrate a prima facie case as to the second, third or fourth elements of the *McDonnell Douglas* standard. Further, the evidence makes clear that CHFA had a legitimate, non-discriminatory basis for terminating Plaintiff's temporary position, along with virtually all other temporary workers at CHFA. Lastly, Plaintiff cannot demonstrate that CHFA's explanation for ending her temporary assignment was pretextual. As such, summary judgment must be granted in favor of Defendants on all Plaintiff's discrimination claims.

### 1.    Failure to Hire

Plaintiff asserts that Defendants discriminated against her by failing to hire her for the Financial Clerk position in October 2015. Plaintiff's claim fails because she cannot establish she was qualified for the position.

It is Plaintiff's burden to establish that she met the qualifications for the position. *See Cooper v. Connecticut Pub. Def.'s Office*, 480 F. Supp. 2d 536, 544 (D. Conn. 2007), *aff'd sub nom. Cooper v. State of Connecticut Pub. Defs. Office*, 280 F. App'x 24 (2d Cir. 2008). "[B]eing 'qualified' refers to the criteria the employer has specified for the position." *Thornley v. Penton Publ'g., Inc.*, 104 F.3d 26, 29 (2d Cir. 1997). "While discriminatory employment practices are prohibited, a court must 'respect the employer's unfettered discretion to choose among qualified candidates.'" *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 581 (S.D.N.Y. 2008) (citation omitted). "A plaintiff may

defeat summary judgment by showing that he was objectively so much better qualified than the person promoted over him that the employer's justification for the decision must be pretextual." *Id.* at 582.

The evidence establishes that the minimum qualifications for the Financial Clerk position included experience in purchase functions and mortgage lending. *See* Facts at ¶ 39. Although Plaintiff asserts she was qualified for the Financial Clerk position, her sworn testimony contradicts her conclusory allegation. She admits that part of the Financial Clerk job duties included purchasing functions, but also admits that she had no experience in this area.[8] Facts, at ¶¶ 48-49.

Importantly, Plaintiff concedes she lacked **any** mortgage lending experience. *See Id.* at ¶ 40. When questioned at her deposition on this issue, Plaintiff dodged this topic several times before admitting she did not understand what mortgage lending experience entailed. *Id.*[9] Plaintiff's lack of relevant work experience barred her from consideration for the Financial Clerk position. Facts at ¶ 40. Simply stated, Plaintiff was not qualified for the position, a critical element in establishing her prima facie case. *See Nielsen v. Bellevue Hosp. Ctr.*, 1996 WL 457326, at *8 (S.D.N.Y. Aug. 14, 1996) (dismissing a failure to hire claim where the plaintiff could not establish he met the minimum qualifications for the position); *Said v. Institute of Int'l Educ., Inc.*, 1982 WL 310, at *6 (S.D.N.Y. Apr. 15, 1982) (holding that plaintiff could not establish a prima

---

8   In her deposition, Plaintiff testified "I did not perform purchasing functions… I did not process purchases at CHFA, no." Facts, at ¶¶ 48-49; Pl. Dep. Tr. at 123:6-12.

9   In her deposition, Plaintiff asked "What are the assignments that [are] involved in mortgage lending? … I … don't know what the details are for mortgage loans or mortgage lending." Facts, at ¶ 40; Pl. Dep. Tr. at 159:1-160:23.

facie case for discriminatory discharge where plaintiff did not meet the requirements for a bank clerk position as defined by the employer).

In *Angione v. Sikorsky Aircraft Corp.*, 199 F. Supp. 3d 628 (D. Conn. 2016), a temporary worker brought an age discrimination action alleging that the employer failed to hire him as a permanent employee due to his age.  The plaintiff was a temporary employee of the staffing agency and was initially assigned as a materials analyst in Sikorsky's Avionics Department.  *Id.* at 631.  During his four years at Sikorsky, plaintiff applied for various positions, including positions in Sikorsky's purchasing and finance groups.  *Id.* During his assignment, plaintiff applied and interviewed for multiple positions but was never hired.  *Id.* at 631-33.  The court held that plaintiff's failure to hire claims failed because he was not qualified for the positions sought and he lacked experience and skills necessary to perform the requisite job functions.  *Id.* at 639.

Here, as in *Angione*, Plaintiff's temporary position with CHFA was, at all times, a clerical one which required Plaintiff to perform clerical tasks that differed from the job responsibilities of the Financial Clerk position.  She admits she lacked experience in mortgage lending and purchasing functions, key responsibilities of the Financial Clerk position. In short, Plaintiff fails to prove a prima facie case for her failure to hire claim because she cannot establish that she was qualified for the position sought.  As such, summary judgment should enter in favor of Defendants.

In the alternative, Plaintiff's discriminatory failure to hire claim fails because she did not apply for the reposted Financial Clerk position that was actually filled.  One of the basic elements of a "failure to hire" case is evidence that Plaintiff actually applied for the position.  *See McCall v. City of Danbury*, 116 F. Supp. 2d 316, 319 (D. Conn. 2000),

*aff'd*, 16 F. App'x 77 (2d Cir. 2001); *Petrosino v. Bell Atl.*, 385 F.3d 210, 226–27 (2d Cir. 2004) (holding that female employee's failure to apply, at least informally, for specific management positions that she knew were vacant in her department precluded employee's failure-to-promote sex discrimination claim under Title VII); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (employee bringing Title VII failure-to-promote claim must "allege that she . . . applied for a specific position . . . and was rejected therefrom, rather than merely asserting that on several occasions she . . . generally requested promotion").

Plaintiff applied and interviewed for a Financial Clerk position that was posted in October 2015. Facts, at ¶ 37.  CHFA received forty-seven (47) applications for the Financial Clerk position.  *Id.* at ¶ 34.  Unsatisfied with the applicant pool, CHFA opted not to hire anyone at the time Plaintiff applied and was interviewed.  *Id.* at ¶ 45.  The position was left unfilled when, on or about November 18, 2015, CHFA reposted the position to expand its search for more qualified candidates.  *Id.* at ¶ 46.  It is undisputed that, in addition to lacking the requisite qualifications, Plaintiff also never reapplied for the reposted Financial Clerk position even though she was aware of the reposting.[10]  *Id.* at ¶ 47.  The individual selected for the Financial Clerk position came from the second

---

10      Plaintiff testified as follows:

      Q:  Were you aware that the financial clerk position was subsequently reposted?

      A:  It was.

      Q:  Did you apply for that position?

      A:  When it was reposted, no.

    Facts, at ¶ 47; Pl. Dep. Tr. at 119:17-21.

pool of applicants in response to the job reposting.[11]  "If plaintiff 'was qualified for the

position ... [y]et he never applied ... [he] was never rejected under circumstances that

would give rise to an inference of racial discrimination.'"  *Campbell v. Cellco P'ship*, 860

F. Supp. 2d 284, 300 (S.D.N.Y. 2012).  Summary judgment should enter in favor of

Defendants because the undisputed facts establish that Plaintiff did not apply for the

Financial Clerk position when it was reposted on or about November 18, 2015.

### 2. Change in Assigned Work

Plaintiff also fails to make out a prima facie case of employment discrimination to

the extent her claim is premised on a change in temporary assignment work duties that

constituted an adverse employment action.  Plaintiff's job duties did not change; she

was always assigned clerical tasks.  To the extent those tasks diminished over time, this

was caused by an overall reduction in workload and not by discriminatory animus.

"[A]ssigning additional job duties that are within a plaintiff's job responsibilities,

even if clerical in nature, does not constitute an adverse employment action."  *Admassu

v. Fox/Lorber Assocs., Inc.*, 2003 WL 22290226, at *3 (S.D.N.Y. Oct. 6, 2003).  In

*Admassu*, the plaintiff worked as an Accounting Manager for the defendant for one year

before having to report to a new supervisor who plaintiff claimed "demoted" her by

directing her to work on data entry tasks, rather than accounting and other financial

tasks.  *Id.* at *1.  The plaintiff in *Admassu* also alleged that "another employee with no

supervisory authority over plaintiff asked her to do data entry work, [that] defendant re-

assigned portions of plaintiff's supervisory responsibilities to other employees, [and]

promoted another employee to the position of Senior Accountant over her."  *Id.*  The

---

[11]  Moreover, the successful applicant for the reposted position was a Hispanic woman.  Facts, at
¶ 48.

court found that the defendant had not discriminated against the plaintiff based on her race and national origin by allegedly forcing her to do non-accounting level clerical work or a mixture of both accounting and related clerical functions.  *Id.* at *6.

Here, Plaintiff alleges that two months before her temporary assignment ended, Defendant "removed major assignments from [her] responsibility."  *See* ECF No. 48 ¶ 10.  She also testified she was "demoted" because Ms. Rodrigues "moved all of her assignment with the exception of scanning."  Pl. Dep. Tr. at 135:4-16 (**Exhibit 3**).  As the court found in *Admassu*, this Court should find that these purported "changes" in duties do not constitute an adverse employment action.

First, scanning was always a task within Plaintiff's job responsibilities.  In fact, the entire purpose of Plaintiff's temporary assignment was to perform clerical duties within the Finance Department.  Facts, at ¶ 22.  Second, there was no job title associated with the temporary work that Plaintiff performed within the Finance Department, and as a temporary worker, Plaintiff was not assigned permanent tasks but completed projects on an as-needed basis.  Facts at ¶¶ 18, 64.  Plaintiff cannot claim she was demoted because she never held a specific job title or responsibility. She always performed clerical work in her capacity as a temporary worker; the nature and the volume even though the volume of clerical tasks simply varied and eventually diminished over time.

In sum, Plaintiff did not suffer an adverse employment action as a result of any alleged change in her temporary work duties. She therefore cannot establish a prima facie case of discrimination.  Summary judgment should enter in favor of Defendants.

### 3.    Termination of Temporary Assignment

Lastly, Plaintiff cannot meet her burden of establishing a prima facie case that she was terminated from her temporary work assignment under circumstances giving

-23-

rise to an inference of discrimination.  "A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably."  *Admassu, supra,* 2003 WL 22290226, at *2 (citation omitted).

Here, Plaintiff admits she was a K Force employee placed by K Force staffing agency in a temporary assignment within CHFA's Finance Department.  Facts, at ¶ 6. Plaintiff was assigned to work at CHFA through an "Employee Work Assignment" executed with K Force, estimated to begin on or around January 14, 2013.  *Id.* at ¶ 13. Plaintiff was hired as a temporary clerical worker, through K Force, who performed overflow tasks for CHFA.  *Id.* at ¶ 2,6.  Further, she understood that the employee work assignment was temporary.  *Id.* at ¶ 23.  Plaintiff testified at her deposition that her assignment at CHFA was not for a set period of time and she understood that it could end at any time.  *Id.* at ¶ 23.

Plaintiff's work assignment ended because the services she performed were no longer needed.  More particularly, as the record makes clear, from the beginning of Plaintiff's assignment in 2013 through the end of her assignment in 2016, CHFA experienced a continual decrease in annual closings of loans requiring monthly assistance from EMAP.  *Id.* at ¶ 56.  It is undisputed that, over the relevant span of time, the work associated with Plaintiff's temporary assignment declined as a result of the decrease in loan closings to the point where no work remained for Plaintiff to perform. *Id.* at ¶ 57.  Toward the end of Plaintiff's temporary assignment, she was performing only scanning services which CHFA also ultimately no longer needed.  *Id.*

-24-

During Plaintiff's temporary assignment, CHFA had used temporary workers to perform these overflow clerical tasks, but CHFA was already in the process of reducing its dependence on a temporary workforce, a process that had absolutely nothing to do with a worker's race or color. Facts, at ¶ 66. Specifically, in 2013, eight (8) temporary workers were assigned to the Finance Department at the time Plaintiff began her assignment at CHFA. *Id.* at ¶ 67. Over the three-year period prior to the termination of Plaintiff's temporary assignment, CHFA reduced its temporary workforce in the Finance Department from eight (8) to one (1) person. *Id.* at ¶ 68. In fact, the evidence demonstrates CHFA reduced its temporary workforce from a high of eighty-two (82) workers in 2011 to only four (4) workers as of early January 2017, which, as set forth below, was part of CHFA's legitimate business decision and overarching plan to reduce its use of temporary workers. *Id.* at ¶¶ 5, 69. Accordingly, summary judgment should enter in favor of Defendants.

### C. Legitimate Non-Discriminatory Reasons Exist for Defendants' Business Decisions and Plaintiff Cannot Show Pretext

Even if Plaintiff is able to establish a prima facie case of discrimination, CHFA had legitimate, non-discriminatory reasons for its actions, which Plaintiff cannot establish was pretext for discrimination based upon Plaintiff's race. CHFA's burden "is one of production, not persuasion, it can involve no credibility assessment." *Martinez v. Connecticut, State Library*, 817 F. Supp. 2d 28, 38 (D. Conn. 2011). In a discrimination claim, the employer can offer any legitimate nondiscriminatory reason for the actions it took. When reviewing an employer's legitimate non-discriminatory reason, the court is not a "roving commission to review business judgments." *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989). "[The court's] role is to

prevent unlawful hiring practices, not to act as a superpersonnel department that second guesses employers' business judgments." *Johnson v. IAC/Interactive Corp.*, 2 F. Supp. 3d 504, 515 (S.D.N.Y. 2014) (internal citations omitted).

Once a defendant offers a legitimate, non-discriminatory reason for its actions, the ultimate burden shifts back to the plaintiff to prove the defendant intentionally discriminated against her – that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination. *Keene v. Hartford Hosp.*, 208 F. Supp. 2d 238, 246 (D. Conn. 2002).

### 1.      Failure to Hire

Defendant had a legitimate non-discriminatory reason for not hiring Plaintiff for the Financial Clerk position in October 2015.  Plaintiff was not the best candidate; she simply did not possess the same level of experience, training, and education as the selected candidate.  Although Plaintiff had experience working at CHFA in a temporary role in the Finance Department, her training and career did not distinguish her as the prime or even qualified candidate for the Financial Clerk position.

As this Court has held, an employer "has discretion to choose among *equally qualified candidates*, provided the decision is not based upon unlawful criteria." *Johnson v. Connecticut Dep't of Admin. Servs.*, 972 F. Supp. 2d 223, 253 (D. Conn. 2013), *aff'd*, 588 F. App'x 71 (2d Cir. 2015) (emphasis added) (citation omitted).  In *Johnson*, an African-American applicant unsuccessfully applied for a position with Connecticut Department of Administrative Services (DAS). On summary judgment, the Court found plaintiff failed to show that DAS's articulated legitimate, nondiscriminatory reasons for not hiring plaintiff were pretextual. The record failed to demonstrate that plaintiff's application was so far superior to that of the successful candidates that no

reasonable person could have chosen those candidates over plaintiff. Simply stated, the choice of a more qualified candidate constitutes a legitimate, non-discriminatory reason for rejecting an applicant.

Additionally, Plaintiff's application materials were demonstrably misleading. During the application and interview process, Plaintiff misrepresented her skills and duties in her temporary position with CHFA.  Facts, at ¶ 36.  Plaintiff claimed in her resume that she was an "Accounting Analyst" at CHFA, despite having no formal title, and claimed further that she reconciled month-end reports and performed closing procedures, created financial statements, conducted audits to the general ledger and maintained financial records, schedules and forms, significantly misstating and over-inflating the clerical work she had performed for CHFA.  *See* Facts, at ¶ 38.  In addition, Plaintiff stated on her resume that, while at Bank of America, she "led sales, and service functions successfully at the banking center."  *See* Pl. Dep. Tr. at 123:13-17 (**Exhibit 3**). However, during the interview with CHFA, Plaintiff conceded she had been terminated by Bank of America for not meeting her sales goals in contradiction to the claim on her resume.  Facts at ¶ 43.

In support of her failure to hire claim, Plaintiff can only offer her own belief – not any evidence in the record – that she was qualified for the Financial Clerk position or that she was more qualified than the person ultimately hired for the position.  "I don't know what they believe, but I am telling you what I was qualified for.  I was qualified for the position."  *See* Facts, at ¶ 74.  A plaintiff's own subjective belief, unsubstantiated by facts and evidence, does not suffice:

> [A]n employee's subjective opinion about his qualifications is insufficient to give rise to a triable issue of fact concerning whether the employer's

> proffered reason for its actions is a pretext for discrimination, and that is
> particularly true where the employer's decision whether to hire plaintiff did
> not depend simply on whether he was qualified, but on whether he was
> the best candidate for the job.

*Richane v. Fairport Cent. Sch. Dist.*, 179 F. Supp. 2d 81, 87 (W.D.N.Y. 2001); *see also*

*Angione*, *supra*, 199 F. Supp. 3d at 638 (plaintiff failed to set forth facts establishing he

was qualified for purchasing and finance positions when his background was more in

warehousing).

In short, although Plaintiff claims she was qualified for the Financial Clerk

position, the evidence, including Plaintiff's sworn testimony, contradicts this claim.  She

had no experience in the purchasing functions required for the Financial Clerk position,

and limited or unsuccessful experience in mortgage lending; Plaintiff did not possess

the depth and breadth of experience and knowledge necessary for the position.  Facts,

at ¶¶ 48-49. Further, Plaintiff's application and resume also were misleading and

overstated, raising additional issues with respect to her qualifications for the position. *Id.*

at ¶¶ 38-40. The fact that Plaintiff had already worked at CHFA and was familiar with

some procedures does not make her the most qualified or the best fit for the position.

Equally important, after reposting the Financial Clerk position in November 2015,

Plaintiff admittedly did not bother reapplying for the position even though she knew it

was reposted. Consequently, CHFA ultimately hired Cynthia Ramos, a Hispanic

woman, because she had significant, relevant work experience in mortgage banking

and lending, experience that Plaintiff admittedly lacked.  *Id.* at ¶ 48. Further, Plaintiff

admitted having no first-hand knowledge of who made the hiring decision for the

Financial Clerk position.  *Id.* at ¶ 51.  Plaintiff testified she had no idea what Ramos' qualifications were.  Facts, at ¶ 74.[12]

Plaintiff cannot offer any evidence to support her claim that Defendant's justifications for not selecting her for the Financial Clerk position were pretextual, or that CHFA's decision was based on race or color – especially considering the selected candidate was a Hispanic female.  Plaintiff was not more qualified for the Financial Clerk position than Ms. Ramos.  When asked to identify the basis for her claim that she was discriminated against, the only grounds Plaintiff could identify was that she felt she was qualified and should have been hired.  Facts, at ¶ 74.  "[C]onclusory and substantially unsupported assertions that an employer's proffered race-neutral reason was a pretext for discrimination may support a grant of summary judgment in favor of the employer."  *Johnson, supra,* 972 F. Supp. 2d at 253; *see also Holt v. KMI-Cont'l, Inc.,* 95 F.3d 123, 130 (2d Cir. 1996) (plaintiff cannot show pretext simply by "asserting her personal belief that she was the most qualified person for the various positions.").

Accordingly, CHFA has satisfied its burden by establishing it had a legitimate, non-discriminatory reason for not selecting Plaintiff for the Financial Clerk position. Plaintiff cannot offer any evidence, except her own conclusory suppositions, to counter CHFA's decision to hire another candidate, and certainly cannot offer any evidence to

---

12    Q:  Were you involved in the hiring process for Cynthia Ramos?

      A:  No.

      Q:  Do you know what her qualifications are?

      A:  I don't know what her qualifications are.

      Facts, at ¶ 74; Pl. Dep. Tr. at 167:22-168:1.

suggest that CHFA's reasons for not hiring her were pretextual. As to this basis for Plaintiff's claims, summary judgment should be granted in favor of CHFA.

### 2. Change in Assigned Work and Termination of Temporary Assignment

With respect to Plaintiff's claims regarding the change in her assigned work and her termination, even if the Court finds Plaintiff can establish a prima facie case of discrimination, CHFA had a legitimate non-discriminatory reason for its decisions. First, the temporary work and tasks that Plaintiff had been doing diminished over the time Plaintiff was assigned to CHFA. Second, for years even before Plaintiff's assignment, CHFA had been in the process of reducing its reliance on the services of temporary workers with the ultimate goal of eliminating all temporary positions, including Plaintiff's. Lack of work and reductions in work force are legitimate, independent, and non-discriminatory reasons for a defendant's adverse employment decision. *See, e.g. Jackson v. Post Univ., Inc.*, 836 F. Supp. 2d 65, 87 (D. Conn. 2011) (rejecting university employee's discriminatory discharge claim where "economic cutbacks led to the termination of one field admissions position and [supervisor's] analysis of employee performance and initiative led him to conclude that plaintiff was the least valuable employee in field admissions"); *Windham v. Time Warner, Inc.*, 275 F.3d 179, 188 (2d Cir. 2001) (concluding a legitimate business reason for terminating employees was that the department had less work); *Jaiyeola v. Carrier Corp.*, 350 F. App'x 583, 585 (2d Cir. 2009) (affirming summary judgment where employer's proffered reason for black male employee's termination, downsizing of department in which he was weakest performer, held to be legitimate, nondiscriminatory reason).

-30-

It is also undisputed that Plaintiff was a temporary worker whose work could be assigned or taken away at any time.  Facts, at ¶ 64-65.  When Plaintiff began her assignment at CHFA, she worked on FEHLP program.  *Id.* at ¶ 52.  Over time, the FEHLP program was eliminated and the FEHLP workload was phased out.  *Id.* at ¶ 53. CHFA then transitioned Plaintiff to work on the State's EMAP program.  *Id.* at ¶ 54.

However, the evidence makes clear that, from the beginning of Plaintiff's assignment with CHFA in 2013, through her termination in January 2016, CHFA experienced overall a decrease in annual loan closings requiring monthly assistance from EMAP.  *Id.* at ¶ 56.  As a direct result of the reduction in loan closings and the attendant reduction in work, Ms. Rodrigues recommended to her manager, John Chilson, and to CHFA Human Resources, that Plaintiff's temporary assignment should be eliminated.  *Id.* at ¶ 57.  CHFA had determined, by late 2015, that it no longer needed Plaintiff's temporary services; however, at Ms. Rodrigues's request, CHFA waited until after the holidays to terminate the temporary assignment.  *Id.* at ¶ 58. In fact, Plaintiff's temporary assignment continued longer than other temporary workers due to Rodrigues's efforts.  *Id.* at ¶ 62.

In short, the end of Plaintiff's temporary assignment resulted naturally as a result of CHFA's goal of winding down reliance on temporary workers and from the lack of EMAP-related clerical work for Plaintiff to perform.  CHFA has set forth a legitimate, non-discriminatory reason for ending Plaintiff's temporary work assignment, and summary judgment should enter in favor of CHFA.

Having demonstrated that CHFA had a legitimate, non-discriminatory basis for its decision, the burden shifts back to Plaintiff.  However, Plaintiff cannot establish that

Defendants' non-discriminatory reason is false or that discrimination was the true reason why Plaintiff's temporary assignment ended. Plaintiff does not dispute that her temporary assignment could have ended at any time. *Id.* at ¶ 65. In addition, Plaintiff chose to leave before the last day of her temporary assignment. Ms. Rodrigues informed Plaintiff, on January 6, 2016, that she would be paid to work through Friday January 8, 2016. *Id.* at ¶ 60. However, Plaintiff chose to leave her temporary assignment immediately, two days before it was scheduled to end. *Id.* at ¶ 61. Finally, CHFA did not replace Plaintiff's temporary position and no CHFA position went unfilled when she left. *Id.* at ¶ 63.

Additionally, there is no evidence that Plaintiff's temporary assignment was changed or terminated because of her race or color, or that CHFA harbored any racial animus toward Plaintiff. Plaintiff can present no evidence to establish that similarly situated employees of a different race were treated more favorably than she was because, in the end, CHFA sought to reduce its temporary workforce as a whole, no matter the race.[13] Plaintiff never filed any complaints of discrimination or voiced any concerns about Ms. Rodrigues's alleged behavior to CHFA's Human Resources or executive-level management or even to her employer, K Force. Facts, at ¶ 72. Plaintiff admitted in her deposition that she had no reason to believe anyone on the interview panel for the Financial Clerk position had discriminated against her based on her race

---

[13]   Moreover, at the CHRO Fact Finding Conference, Plaintiff's witness, Deborah Campbell, who is African-American, and who never worked with Plaintiff in Defendant's Finance Department, and who voluntarily left her temporary assignment with Defendant in 2014 to start a regular, full-time job at another organization, stated that Defendant did not hire temporary employees, no matter the race, and that she believed this was a result of "a lot of politics." *See* State of Connecticut Commission on Human Rights and Opportunities No Reasonable Cause Finding dated May 31, 2017. *See* **Exhibit 5**.

or color.  *Id.* at ¶ 37.  In short, it is undisputed that Defendants did not harbor any discriminatory animus towards Plaintiff and Plaintiff cannot establish an inference of discrimination.  Plaintiff's employment discrimination must fail based on the complete lack of any evidence demonstrating Plaintiff was discriminated against because of her race or color.  Accordingly, because Plaintiff has failed to meet her burden on the essential elements of her Title VII claim, the Court should enter summary judgment in CHFA's favor on Plaintiff's claims that she was not hired for the Financial Clerk position and that her temporary assignment was changed or ended because of intentional race discrimination.

## IV.   SUMMARY JUDGMENT SHOULD ENTER IN CHFA'S FAVOR ON PLAINTIFF'S HARASSMENT/HOSTILE WORK ENVIRONMENT CLAIM

In Count Two, Plaintiff alleges she was subject to harassment and a hostile work environment during her temporary assignment at CHFA, in violation of Title VII.  A claim of discriminatory treatment in violation of Title VII may be premised on proof that the plaintiff was required to work in a hostile or abusive work environment.  *Blake v. Developmental Servs.*, 278 F. Supp. 3d 519, 533 (D. Conn. 2017), *aff'd sub nom. Blake v. Department of Developmental Servs.*, 750 F. App'x 54 (2d Cir. 2019).  Here, because no evidence exists that Plaintiff was subjected to conduct sufficiently severe or pervasive to alter the conditions of her work assignment, summary judgment should enter in favor of CHFA on Count Two.

### A.   Plaintiff Cannot Demonstrate She was Subject to Severe or Pervasive Harassment

"To prevail on a hostile work environment claim, a plaintiff must establish that her workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment.'" *Longshore-Pizer v. Connecticut*, 451 F. Supp. 2d 401, 411 (D. Conn. 2006) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  This Court follows the Supreme Court's two-part test for proving a hostile work environment claim.  *Id.*  The first part addresses "whether the conduct in question was objectively hostile," while the second part examines whether the plaintiff "subjectively perceived the work environment as abusive."  *Id.* at 411-12.

To determine whether a work environment is objectively hostile, the Court must look at the totality of the circumstances, considering such factors as "the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance."  *Williams v. Cty. of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999).  "No single factor is required or dispositive."  *Longshore-Pizer,* 451 F. Supp. 2d at 412. If the plaintiff can make this showing, she must then demonstrate that she subjectively perceived the work environment as abusive.  "The demonstrated effects that the work environment had on the plaintiff's mental well being are very pertinent to deciding whether the plaintiff actually viewed her surroundings as intolerable."  *Id.* Finally, "it is axiomatic that to establish a race-based hostile work environment under Title VII, the plaintiff must demonstrate that the conduct occurred because of her race."  *Blake, supra*, 278 F. Supp. 3d at 533.

In this case, Plaintiff's hostile work environment claim fails because no evidence exists to support her claim that she was subject to severe or pervasive conduct based on her race.  Plaintiff offers conclusory allegations that, during the course of her employment, Ms. Rodrigues exhibited a negative animus toward black employees.  *See*

ECF No. 48 at ¶ 12.  Plaintiff alleges that Ms. Rodrigues "routinely spoke condescendingly" and "verbally attacked" two separate black employees.  *Id.*  Plaintiff produced no evidence to support these allegations.

With respect to conduct directed particularly at Plaintiff, she alleged that "Defendant Rodrigues would never communicate directly with the Plaintiff, and while she once acknowledged the death of a sick cat of a Caucasian employee, Rodrigues never acknowledged Plaintiff when she returned to work after a brief illness."  *See* ECF No. 48 at ¶ 13.  In her deposition, Plaintiff testified Ms. Rodrigues also discriminated against her because Ms. Rodrigues watched movies in her office on her phone with other employees, but never asked Plaintiff to participate.  *See* Pl. Dep. Tr. at 229:16-24.  (**Exhibit 3**).  Plaintiff undermined her own testimony, however, by conceding she had no evidence to support her claim because she was never in the office with Ms. Rodrigues and she could not actually see that Ms. Rodrigues and others were watching movies on the phone.  *See* Pl. Dep. Tr. at 230:3-11.  (**Exhibit 3**).  Ms. Rodrigues denied watching videos or movies on her phone in the workplace.  Rodrigues Dep. Tr. at 155:25-156:1.  (**Exhibit 2**).  Plaintiff alleged Ms. Rodrigues often congregated with other employees and excluded Plaintiff.  *See* Pl. Dep. Tr. at 230:12-22.  (**Exhibit 3**).  However, Plaintiff offered no evidence to corroborate her assertion and, as Ms. Rodrigues testified, any private conversations she had with other employees were work-related.  Rodrigues Dep. Tr. at 156:2-7.  (**Exhibit 2**).

Lastly, Plaintiff alleges that she had major assignments taken away from her and that she had to train individuals hired after Plaintiff started her temporary assignment at CHFA.  *See* ECF No. 48 at ¶ 8, 10.  Removal of assignments and being asked to train

other individuals does not constitute severe or pervasive harassment.  *See Blake*, *supra*, 278 F. Supp. 3d at 533 (holding that temporary work reassignments and excessive monitoring was not sufficiently severe or pervasive conduct to rise to the level of creating a hostile work environment). Further undermining her claim, Plaintiff admitted at her deposition that she was not individually singled out to train a new employee, Ann Lea, but that she was part of a larger, collaborative team assigned to train Ms. Lea.  *See* Pl. Dep. Tr. at 110:6-12.[14]  (**Exhibit 3**).

Even taking these allegations as true and construing them in the light most favorable to Plaintiff, she cannot establish that the alleged hostile conduct was objectively severe and pervasive.  "Conduct that is merely offensive, and not severe or pervasive enough to create an objectively hostile or abusive work environment [meaning] an environment that a reasonable person would find hostile or abusive [ ] is beyond Title VII's purview." *Blake*, *supra*, 278 F. Supp.3d at 533 (internal quotation marks omitted) "[B]oorish behavior, without more, does not create an actionable hostile work environment." *Johnson v. IAC/Interactive Corp.*, 2 F. Supp. 3d at 517.

Indeed, in *Johnson*, the court held that the plaintiff did not produce evidence of a hostile work environment to survive summary judgment where the plaintiff alleged an undesirable apportionment of assignments, inadequate support, premature review of

---

14    A:   When Ann started I actually assisted with her training.

Q:   By yourself?

A:   Other employees.

Q.   So other employees and you collaboratively trained Ann Lea?

A.   Correct.

Pl. Dep. Tr. at 110:6-12.

her work, a strict standard of review applied to her work, and that she suffered rude but facially-neutral comments in a demeaning tone.  As with the allegations in *Blake* and *Johnson*, Plaintiff's allegations in this case, even if true, fail to rise to the level of a hostile work environment claim.  More significantly, the evidence fails to demonstrate the existence of an objectively hostile work environment.

Moreover, Plaintiff cannot demonstrate that the alleged conduct occurred because of her race.  Other than uncorroborated allegations, Plaintiff has no proof demonstrating that employees of another race or color were treated more favorably than she was, or that Ms. Rodrigues or anyone else at CHFA ever directly referenced Plaintiff's race or color.  No evidence exists that Ms. Rodrigues or anyone else at CHFA made disparaging statements or engaged in any other inappropriate conduct directed toward Plaintiff because of her race or color.  In fact, Plaintiff testified that her only evidence of race and color discrimination on the part of Ms. Rodrigues is her general belief that Ms. Rodrigues engaged in disparate treatment against black African-Americans.  Facts, at ¶ 77.

In sum, Plaintiff cannot meet the applicable legal standard for demonstrating objectively or subjectively that she was subjected to a hostile work environment.  Accordingly, summary judgment must enter in favor of CHFA on Plaintiff's hostile work environment claim in Count Two.

**V.     DEFENDANTS ARE ENTITLED TO SUMARY JUDGMENT ON PLAINTIFF'S SECTION 1983 CLAIMS IN COUNTS THREE AND FOUR FOR THE ADDITIONAL REASON THAT PLAINTIFF FAILS TO ALLEGE OR ESTABLISH A VIOLATION OF HER CONSTITUATIONAL RIGHTS AS A RESULT OF AN OFFICIAL POLICY OR CUSTOM**

Plaintiff has failed to allege, let alone establish, a CHFA policy or custom that would support her Section 1983 claims.  Per well-established law, a public entity or

official cannot "be held liable under Section 1983 for alleged unconstitutional actions by its employees below the policy-making level solely upon the basis of respondeat superior." *Ukeje v. New York City Health & Hosps. Corp.*, 821 F. Supp. 2d 662, 669 (S.D.N.Y. 2011).  To establish a viable 1983 claim for the unconstitutional acts of a defendant's employees, a "plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy." *Id.* at 670.

Here, Plaintiff's Third Amended Complaint fails to allege that CHFA maintained a custom or policy, *i.e.*, "a widespread pattern of behavior" implicating her narrow claims of discrimination and harassment aimed at Ms. Rodrigues.  The entirety of this case is, in essence, a dispute concerning Plaintiff's perceived treatment under the supervision of Ms. Rodrigues.  Indeed, Plaintiff conceded at her deposition that her claims are directed at Ms. Rodrigues, and she has no reason to believe that anyone at CHFA other than Ms. Rodrigues harbored any discriminatory animus.  *See* Facts at ¶ 76.  Consequently, in addition to the fact that the Plaintiff simply cannot produce evidence of any discrimination or harassment, she cannot establish that CHFA maintained any widespread custom or policy to support her claims.  *See, e.g., Collins v. Stasiuk*, 56 F.Supp.2d 344, 345 (S.D.N.Y.1999) ("The decision to fire one man, for whatever reason, is neither a course or method of action . . . .  It is a singular act, applicable to one individual . . . .  It is hard to imagine any decision that falls farther outside the common understanding of the word 'policy.'").  Plaintiff's Section 1983 claims against CHFA and Ms. Rodrigues must therefore be dismissed with prejudice. *Ukeje*, 821 F. Supp. 2d at 671 (granting summary judgment to defendant employer because plaintiff failed to show any evidence of any municipal policy or practice).

-38-

## VI.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court

grant their Motion for Summary Judgment in its entirety.

DEFENDANTS CONNECTICUT HOUSING
FINANCE AUTHORITY AND CLAUDIA
RODRIGUES

By    /s/ Matthew K. Curtin
     Matthew K. Curtin – ct27765
     mcurtin@murthalaw.com
     Chelsea K. Choi – ct30387
     cchoi@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone:  860.240.6000
Facsimile:   860.240.6150
Their Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2020, a copy of the foregoing was electronically filed.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Matthew K. Curtin
Matthew K. Curtin